UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| SHAWN CARSON, Individually and On Behalf of the Estate of Doris Carson,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN QUALITY SCHOOLS CORPORATION THEA BOWMAN LEADERSHIP ACADEMY and UNITED OF OMAHA LIFE INSURANCE COMPANY,<br><br>Defendants. | No. 2:15CV348-PPS |

## OPINION AND ORDER

Shawn Carson's wife, Doris, passed away while employed by the Thea Bowman Leadership Academy, a charter school operated by American Quality Schools Corporation. Defendant United of Omaha Life Insurance Company was the underwriter of a group insurance plan sponsored by AQSC for its employees. Shawn Carson alleges in this case that Doris paid premiums for life insurance by way of payroll deduction, and completed all related forms provided to her by AQSC in order to secure a policy of life insurance with Shawn as the beneficiary. [DE 2 at 2.] But after Doris's death in April of 2013, Shawn's claim for life insurance proceeds was denied by United of Omaha. [*Id.*]

Shawn's complaint was originally filed in state court and asserted claims of negligence and breach of contract claims against both AQSC and United of Omaha.

The action was removed to this court on the basis of both diversity jurisdiction and federal question jurisdiction, specifically ERISA, the Employee Retirement Income Security Act of 1974. [DE 1 at 2-3.] When United of Omaha moved to dismiss the complaint as preempted by ERISA, I had the opportunity to explain that in this circuit, ERISA preemption is not a basis for dismissal of preempted state law claims. Instead the Seventh Circuit has held that "the proper course of action is to allow the claims to stand in federal court, but construe the state law claims as presenting ERISA claims." *Order and Opinion* of 4/28/16 [DE 19 at 3], citing *Bartholet v. Reishauer A.G.*, 953 F.2d, 1077-78 (7th Cir. 1992); *McDonald v. Household Int'l, Inc.*, 425 F.3d 424, 425 (7th Cir. 2005). On that basis, the case has proceeded to the present stage, at which both defendants have filed motions for summary judgment which are now fully briefed and ready for ruling. Under Fed.R.Civ.P. 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

### Undisputed Facts

The following facts are undisputed for purposes of the motions for summary judgment. Doris Carson was hired by the Thea Bowman Leadership Academy on November 1, 2010. Under the AQSC life insurance program, underwritten by United of Omaha, Carson became eligible for enrollment on January 1, 2011, after two months of

2

active employment with AQSC. [A.R. at 34.]¹ The life insurance program included both basic life insurance benefits in the amount of $25,000.00 and a voluntary life insurance policy for an additional benefit up to $150,000.00 subject to certain conditions. The life insurance plan was self-administered by AQSC. [DE 34 at 12; DE 42 at 1.] United of Omaha served as the claims review fiduciary for the Plan. [DE 34 as 12.]

Under the heading "When Employee Insurance Begins," the United of Omaha policy includes this language: "[T]he Employee must request insurance by properly completing and signing an enrollment form acceptable to Us and submitting this form to the Policyholder (who will then submit the form to Us) within 31 days following the day the Employee becomes eligible for the Policy." [A.R. at 34.] That section of the policy goes on to indicate that the Employee will become insured on the first day of the month on or after "the Employee's enrollment form, acceptable to [the insurer], is properly completed and signed; and, if required [the insurer] approve[s] Evidence of Good Health provided the Employee is Actively Employed on that date." [A.R. at 34.] The plan definition of "Evidence of Good Health" provides that "such evidence is required when an Employee...applies for insurance more than 31 days after the date the Employee completes the Eligibility Waiting Period." [A.R. at 33.]

---

¹ The parties cite to the insurance company's administrative record (A.R.) by internal Bates-stamped page numbers. For simplicity's sake, I will do the same.

Joyce Schmidt of Pierce Benefits was the insurance broker for AQSC. [A.R. at 174.] Schmidt input Doris's life insurance application on Mutual of Omaha's website with a signature date of December 15, 2010. [A.R. at 175.] But other records suggest that Schmidt didn't input Doris's enrollment until March 17, 2011. [A.R. at 177.] After Doris's death, a representative of AQSC indicated that she had a "claim" from Doris (by which she meant an application) dated January 15, 2011. [A.R. at 175.] Two copies of a Doris Carson Enrollment Form for voluntary life insurance coverage of $100,000.00 dated "1/15/11" appear in the administrative record. [A.R. at 168-170, 171-173.] The administrative record also contains one Enrollment Form on which Doris Carson's signature is dated "3/15/11." [A.R. at 183-184.] A handwritten notation at the bottom of each of the three Enrollment Forms indicates that it was "emailed to Joyce 3/17/11." [A.R. 168, 171, 183.] Doris's husband Shawn Carson is named the primary beneficiary. [A.R. at 183.]

The administrative record does not reflect Doris Carson's submission of any Evidence of Good Health. Neither does it contain any communication to Doris Carson after receipt of her Enrollment Form indicating that Evidence of Good Health was required, or that her enrollment was rejected for lack of such evidence. For the just over two years until her death in April 2013, Doris Carson paid, and defendants accepted, the premiums applicable to the enhanced life insurance coverage — the $100,000 policy — for which she had enrolled. The electronic record system of "Mutual of Omaha" reflected, as of April 29, 2013, that Doris Carson had voluntary life

insurance of $100,000 as an "Active Member" of the Thea Bowman High School plan. [A.R. at 185.]

Doris Carson died on April 28, 2013 at age 44 of acute and chronic congestive heart failure and dilated cardiomyopathy. [A.R. 187] United of Omaha received a claim form signed by Shawn Carson and dated May 10, 2013, submitted with a copy of the Doris Carson Enrollment form dated March 15, 2011, a webportal printout with a "Mutual of Omaha" logo reflecting Doris Carson's enrollment for $100,000.00 in voluntary life insurance coverage, and a copy of the Certificate of Death. [A.R. at 181-189.]

Upon receipt of Shawn Carson's claim to the life insurance benefits, United of Omaha investigated Doris's enrollment. United of Omaha claims that it "was informed that Broker Joyce Schmidt enrolled Decedent online on March 17, 2011, but erroneously claimed a date of application of December 15, 2010 on the portal website as opposed to March 15, 2011, the date on the enrollment form." [DE 34 at 6.] In the course of the investigation, both AQSC and broker Joyce Schmidt initially suggested that a form dated December 15, 2010 as well as a form dated January 15, 2011 existed. [DE 34 at ¶16; DE 43-1 at ¶16.] Ultimately only a form dated January 15, 2011 was provided by Ms. Schmidt to United of Omaha. [*Id.*]

Shawn Carson's claim for life insurance benefits was granted as to the $25,000.00 in basic benefits, but was denied for $100,000 voluntary life insurance benefits. [A.R. at 165.] The premiums Doris paid for the enhanced coverage for more than two years

5

were refunded. [*Id*.] The decision to deny benefits was made by United of Omaha, not by AQSC. [A.R. 144-146, 109-111.] United of Omaha explained the denial of Shawn's claim in a letter dated June 13, 2013:

> According to the information received, your wife completed the enrollment form for coverage under [the voluntary policy] on March 15, 2011. The enrollment was submitted to our company on March 17, 2011. Since this was more than 31 days after your wife had completed the Eligibility Waiting Period, Evidence of Good Health was required for approval of benefits. We do not have a record of the submission of Evidence of Good Health by your wife.
>
> Therefore, since your wife enrolled in [the voluntary policy] more than 31 days after she completed the Eligibility Waiting Period and Evidence of Good Health was not submitted and approved, your claim for benefits under this policy must be denied.

[A.R. at 145.] This explanation of the claim denial omits some of United of Omaha's internal analysis, namely its conclusion that the date on the later-produced but earlier-dated Enrollment Form had been altered to read "1/15/11." [A.R. at 137. *See also* A.R. at 86]

## United of Omaha's Motion for Summary Judgment

With respect to an employee benefit plan governed by ERISA, a plaintiff may bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. §1132(a)(1)(B). Carson's claims against United of Omaha, although initially pled on theories of breach of contract and negligence, can be construed to include a claim to recover benefits under §1132(a)(1)(B). In some

6

circumstances an individual beneficiary can also bring a claim for breach of fiduciary duty in an ERISA context under §1132(a)(3)(B), which provides for a civil action "to obtain other appropriate equitable relief."[2] United of Omaha has addressed both species of claims in its motion for summary judgment.

The breach of fiduciary claim can be dealt with quickly. United of Omaha argues that, to the extent Carson's state law negligence claim might be construed as a breach of fiduciary duty claim under ERISA, it is not viable. An equitable claim for breach of fiduciary duty under §1132(a)(3) is not available when recovery of benefits is also sought under §1132(a)(1)(B). *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996); *Peabody v. Davis*, 636 F.3d 368, 373 (7th Cir. 2011); *Mondry v. American Family Mutual Ins. Co.*, 557 F.3d 781, 805 (7th Cir. 2009) ("Consistent with *Varity*'s admonition, a majority of the circuits are of the view that if relief is available to a plan participant under subsection (a)(1)(B), then that relief is *un*available under subsection (a)(3)."). Plaintiff does not respond with any argument to the contrary; his brief omits any reference to fiduciary duty entirely. United of Omaha is entitled to judgment as a matter of law on any claim of breach of fiduciary duty, construed from his original Count IV, a claim of negligence against United of Omaha.

Another issue can be dealt with in short order. United of Omaha moves for summary judgment as against the Estate of Doris Carson, contending that the Estate is

---

[2] A third type of ERISA claim, under §1132(a)(2), is brought by a plan participant or beneficiary in a representative capacity on behalf of the plan itself, and is inapplicable here.

7

neither a plan participant nor beneficiary, and therefore not a proper ERISA plaintiff under either §1132(a)(1) or (a)(3). Carson is silent on this contention in response, and defendant's argument is well-taken. The claims of the Estate of Doris Carson are subject to summary judgment.

I turn next to the meat of the case against United of Omaha — the breach of contract claim in Count III, now construed as an ERISA claim for recovery of benefits under §1132(a)(1)(B). In interpreting an ERISA plan, I apply general principles of contract law consistent with federal common law on ERISA claims. *Cheney v. Standard Insurance Company*, 831 F.3d 445, 450 (7th Cir. 2016). *See also Ruttenberg v. U.S. Life Ins. Co.*, 413 F.3d 652, 659 (7th Cir. 2005), citing *Bock v. Computer Assocs. Int'l, Inc.*, 257 F.3d 700, 704 (7th Cir. 2001). I consider the denial of benefits *de novo* unless the plan grants the plan administrator discretionary authority to construe policy terms. *Cheney*, 831 F.3d at 849, citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Here there is no dispute that the ERISA plan did *not* grant such discretionary authority, and United of Omaha is not entitled to the more deferential arbitrary and capricious review of its policy interpretations. *Id.*

What *do novo* review means is that "[i]n an ERISA case, the district court 'must come to an independent decision on both the legal and factual issues that form the basis of the claim.'" *Marantz v. Permanente Medical Group, Inc. Long Term Disability Plan*, 687 F.3d 320, 328 (7th Cir. 2012), quoting *Diaz v. Prudential Ins. Co. of Am.*, 499 F.3d 640, 643 (7th Cir.2007). "[W]hether the plan administrator gave the employee a full and fair

hearing or undertook a selective review of the evidence is irrelevant. In fact, 'the district courts are not reviewing anything; they are making an independent decision about the employee's entitlement to benefits.'" *Id.* Shawn Carson ultimately has the burden of proof in the case because the party seeking to enforce benefits under a policy governed by ERISA "bears the burden of proving his entitlement to contract benefits." *Ruttenberg*, 413 F.3d at 663.

The stated basis for United of Omaha's denial of voluntary term life insurance benefits was the lack of Evidence of Good Health. Shawn argues that the plan language relating to Evidence of Good Health is ambiguous, but it isn't. Insurance policies are notoriously byzantine, and although I may support Shawn's criticism of the way the policy language is organized, burying an important coverage requirement in a definition, the language is nonetheless there and the pieces fit together just the way United of Omaha contends. If an Employee applies for insurance more than 31 days after she becomes eligible, then Evidence of Good Health is required, and coverage will not begin until that evidence is approved. [A.R. at 33, 34.] None of the vocabulary in these provisions is difficult or confusing. Shawn offers no sense in which any of the terms are susceptible to alternative meanings, creating ambiguity.

The applicable rules require me to interpret the terms of ERISA plans in an "ordinary and popular sense" as would a person "of average intelligence and experience." *Sellers v. Zurich American Ins. Co.*, 627 F.3d 627, 632 (7th Cir. 2010) (citation omitted). The two critical references to Evidence of Good Health are within a page of

9

one another, and their relationship to one another is not beyond the understanding of a person of average intelligence and experience. The fact that the Enrollment Form and Summary of Coverage did not explain the Evidence of Good Health requirement is neither here nor there; the form and summary obviously cannot repeat all the policy's provisions concerning coverage requirements. The summary does in fact preview the issue by indicating that Evidence of Good Health is sometimes required to become insured, and by warning that "Definitions of capitalized terms in this Summary of Coverage can be found in the Certificate." [A.R. at 17, 15.] All the time, laymen sign contracts and purchase insurance they don't fully understand, but lack of a lawyerly command of the terms does not excuse non-compliance or warrant a relaxation of requirements that are not ambiguous.

Since the policy is unambiguous, the question I must answer is whether there is a genuine dispute of fact regarding whether Doris's application occurred within the 31-day period so that no Evidence of Good Health was required. Summary judgment in favor of United of Omaha cannot be granted because there is indeed a genuine dispute as to the date on which Doris Carson applied for voluntary term life insurance. The administrative record contains two Enrollment forms, one dated January 15, 2011 and the other dated March 15, 2011. The former Enrollment form is timely; the latter is not. Further complicating things is the reference to a signature date of December 15, 2010 for Doris Carson's enrollment elsewhere in internal United of Omaha communications. [A.R. at 175.] On this evidentiary record, I certainly cannot find, as United of Omaha

would have me do, that it is undisputed that Doris applied for insurance on March 15. If it is ultimately determined that she applied on December 15 or January 15, within the 31-day period, no Evidence of Good Health was required and the denial of benefits was in error. Because of this genuine fact dispute, Shawn's claim for insurance benefits survives summary judgment.

United of Omaha boldly asserts that Shawn "conceded that his wife enrolled late for the coverage at issue," citing his memorandum to the company appealing the denial of benefits. [A.R. at 140.] I see no such concession in its language. As Shawn understood the situation at that time, the denial was based on the lack of Evidence of Good Health. Shawn's memo in effect disputes Doris's failure to submit such evidence, but to construe this as a concession that the enrollment was tardy is not supportable in my view. The letter was by a layperson, not a lawyer, and was disputing the coverage denial on its own factual terms. That Shaw did not make the alternative argument, based on evidence he likely did not yet possess, that Doris's enrollment did not require Evidence of Good Health because it was timely submitted, is not properly construed in the manner United of Omaha suggests in this summary judgment context.

Because I will deny United of Omaha's motion as to the benefits claim, several other issues touched upon in Shawn's brief need not be fully addressed. Shawn invokes the plan's incontestability provision, which United of Omaha contends has no application here. My resolution of that dispute would amount to an advisory opinion

11

when my ruling on United of Omaha's motion does not depend upon or require it. Shawn also points out that United of Omaha accepted premiums from Doris for more than two years, and there is no evidence that Doris ever received any communication that Evidence of Good Health was needed or that her application for coverage was rejected. [DE 43 at 14.] But Shawn offers no analysis or authority for the legal significance of this behavior by the insurer. I note that United of Omaha accepts monthly premium payment "in the sum of the individual premiums for each Insured Person," so it isn't clear whether United of Omaha keeps track of individual insureds' payments and paperwork, or leaves that to AQSC. [A.R. at 3.] United of Omaha contends that AQSC was responsible for these administrative details because its Group Life Insurance Program was self-administered. [DE 46 at 10.] Carson does not respond to this assertion. In any event, because summary judgment for United of Omaha on the benefits claim is being denied on other grounds, issues of waiver or estoppel which have not been fully presented by plaintiff now will not be addressed at this juncture.

**American Quality Schools Corporation's Motion for Summary Judgment**

AQSC makes the same argument as United of Omaha concerning the Estate as a party-plaintiff, namely that the Estate is neither an ERISA participant nor beneficiary and so has no claim under ERISA. Again Shawn does not respond with any argument to the contrary. AQSC's motion will be granted as against the Estate of Doris Carson.

Beyond that, AQSC's motion addresses the two types of ERISA claims potentially made by Shawn. To the extent that one of Shawn's state law claims is

construed as a claim for benefits under ERISA, AQSC seeks summary judgment because Shawn does not dispute that United of Omaha, not AQSC, made the decision to deny benefits. [DE 36 at 4.] The Seventh Circuit has clearly stated what seems intuitively obvious: "a cause of action for 'benefits due' must be brought against the party having the obligation to pay." *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 913 (7th Cir. 2013). And in the case of an ERISA life insurance plan like the one involved here, where the "employee-benefits plan is implemented by insurance and the insurance company decides contractual eligibility and benefits questions and pays the claims, an action against the insurer for benefits due 'is precisely the civil action authorized by §1132(a)(1)(B).'" *Id.*, quoting *Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202, 1207 (9th Cir. 2011) (en banc). *See also Sumpter v. Metropolitan Life Insurance Company*, No. 16-2012, 2017 WL 1379191 (7th Cir. April 18, 2017). Shawn does not dispute that United of Omaha was the decisionmaker and potential payor of the life insurance claim. [DE 36 at 2; DE 42-1 at 1.] As a matter of law then, Shawn has no claim for benefits under §1132(a)(1)(B) against AQSC, which is entitled to summary judgment on Count I, construed as such a claim.

AQSC further argues that any ERISA claim against it for breach of fiduciary duty also fails, for the simple reason that AQSC is not a plan fiduciary. [DE 36 at 5.] First I note that ERISA requires that every employee benefit plan be "maintained pursuant to a written instrument" which "shall provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and

13

administration of the plan." 29 U.S.C. §1102(a)(1). Despite this statutory requirement, no plan document identifying the named fiduciaries of the life insurance plan has been provided with the Administrative Record, and no party has identified any named fiduciary in its briefs. The absence of the disclosure of the named fiduciaries is troubling, and it seems likely that AQSC as the sponsoring employer would be so named.

Likewise, the record does not contain a plan instrument designating the "administrator" of the Plan, pursuant to 29 U.S.C. §1002(16)(A)(i). AQSC appears to be the "plan sponsor" as that term is defined in §1002(16)(B), and thus is the "administrator" under §1002(16)(A)(ii), in the absence of some other specifically designated administrator. "A plan administrator qualifies as a fiduciary." *Brooks v. Pactiv Corp.*, 729 F.3d 758, 765 (7th Cir. 2013). Besides the mystery named fiduciaries and the designated administrator of the Plan, other parties can be Plan fiduciaries if they meet one of the three prongs of the statutory definition found in 29 U.S.C. §1002(21)(A). Subsection (iii) is the prong potentially applicable to AQSC, if it "has any discretionary authority or discretionary responsibility in the administration of such plan." If AQSC had general fiduciary responsibility as a named fiduciary or designated administrator, it would also likely have exercised discretionary authority or responsibility in administering the life insurance plan it offered its employees, including how new employees are advised of the availability of benefits and the

14

requirements for enrollment, as well as the manner in which enrollment forms are handled and are forwarded to the insurer to establish a new plan participant.

AQSC contends that it had no discretionary control, discretionary authority or discretionary responsibility under the terms of the plan, and therefore was not a fiduciary. [*Id*.] This assertion omits reference to named fiduciaries and designated administrators of the Plan, and is therefore insufficient to demonstrate as a matter of law that AQSC did not act in a fiduciary capacity with respect to Doris Carson's enrollment. Would the defendants have me believe that there was *no* person or entity with fiduciary duty concerning the enrollment end of the Plan? If anyone did, wouldn't it have been AQSC, as the employer, Plan sponsor and administrator? AQSC's analysis of the fiduciary duty claim is inadequate to demonstrate its entitlement to judgment as a matter of law.

Shawn responds by enumerating the functions AQSC had in the administration of the plan, such as enrollment, premium deductions and calculation of premium remittances to United of Omaha. [DE 42 at 1.] Shawn argues that AQSC had a duty "to make sure its employees are properly enrolled and provided with any necessary forms as part of the enrollment as well as to deduct appropriate premiums." [*Id*. at 5.] At this juncture on the standards applicable to summary judgment, and given the inadequate treatment of the fiduciary duty issue by AQSC, I cannot conclude as a matter of law that AQSC was not a fiduciary for purposes of providing Doris Carson the information and forms needed to properly enroll for the voluntary life insurance

coverage she elected, and for purposes of timely processing her enrollment form once submitted.

Like United of Omaha, AQSC also challenges any fiduciary duty claim on the ground that it cannot co-exist with a claim for benefits. [*Id.* at 6.] AQSC argues, as United of Omaha did, that no claim for breach of fiduciary duty under ERISA can proceed where the plaintiff also has a claim for benefits that would provide adequate relief for his injury. *Varity*, 516 U.S. at 515; *Peabody*, 636 F.3d at 373. But even if Carson cannot assert both a claim for benefits and a claim for breach of fiduciary duty against United of Omaha as the insurer, it doesn't mean that he can't bring a claim for benefits against one defendant and a claim for breach of fiduciary duty against another. If the denial of life insurance benefits is ultimately upheld, so that Carson gets no relief against United of Omaha, it may be the case that equitable relief will be "appropriate" under §1132(a)(3) to remedy a breach of fiduciary duty by AQSC if it caused the denial of the life insurance benefits.

AQSC also points out that Shawn's complaint seeks only damages, but relief for a breach of fiduciary duty under §1132(a)(3) is limited to equitable remedies, which do not include claims for money due and owing under the plan. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210, 221 (2002); *Kenseth v. Dean Health Plan Inc.*, 610 F.3d 452, 482 (7th Cir. 2010) ("compensatory damages and other forms of legal relief are beyond the scope of the relief authorized"); *Peralta v. Hispanic Business, Inc.*, 419 F.3d 1064, 1076 (9th Cir. 2005). But the Seventh Circuit has expressed an openness to

restitution as an equitable remedy under §1132(a)(3), observing that restitution "holds out the prospect of monetary relief to the plaintiff." *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 482 (7th Cir. 2010). *See also Brosted v. Unum Life Ins. Co. of America*, 421 F.3d 459, 466 (7th Cir. 2005). On very similar facts the Court of Appeals for the Eighth Circuit has suggested that recent Supreme Court ERISA precedent supports consideration of monetary relief as an equitable remedy. *Silva v. Metropolitan Life Ins. Co.*, 762 F.3d 711, 720-25 (8th Cir. 2014), discussing *CIGNA Corp. v. Amara*, __ U.S. __, 131 S.Ct. 1866 (2011). For all these reasons, I will deny AQSC's motion with respect to Count II, construed as an ERISA fiduciary duty claim.

## Conclusion

Summary judgment will be granted to both defendants against plaintiff Shawn Carson as representative of the Estate of Doris Carson, because the Estate is not a proper party to assert claims under ERISA.

AQSC will be granted summary judgment as to Count I, construed as a claim for benefits under ERISA. Summary judgment will be denied AQSC on Count II, construed as a claim for breach of fiduciary duty under ERISA. AQSC has not demonstrated as a matter of law that it did not act as a fiduciary with respect to Doris Carson's enrollment in the voluntary life insurance plan, or that it did not breach its fiduciary duties in that capacity.

United of Omaha will be granted summary judgment as to Count IV, construed as a breach of fiduciary duty claim under ERISA. Genuine disputes of material fact – particularly the timing of Doris Carson's enrollment in the voluntary life insurance plan – preclude summary judgment in favor of United of Omaha on Count III, construed as a claim for ERISA benefits under §1132(a)(1)(B).

Shawn Carson has not filed a cross-motion for summary judgment as was forecast before the magistrate judge. [DE 25.] He argues that the defendants have not met their burden as summary judgment movants, and refers to disputed matters that "should be decided by a jury." [DE 43 at 6.] Carson should know that there will be no jury trial even of the claims that survive summary judgment, because I previously struck Carson's jury demand when I denied the motion to dismiss and announced that his claims would be construed as brought under ERISA. [DE 19 at 5.]

**ACCORDINGLY:**

Defendant American Quality Schools Corporation's motion for summary judgment [DE 35] is GRANTED as to Count I, construed as a claim for ERISA benefits under 29 U.S.C. §1132(a)(1)(B). but is DENIED as to Count II, construed as a claim for breach of fiduciary duty under §1132(a)(3). The motion is granted as against plaintiff Shawn Carson as representative of the Estate of Doris Carson.

Defendant United of Omaha's motion for summary judgment [DE 33] is GRANTED as to Count IV, construed as a breach of fiduciary duty claim under ERISA, but is DENIED as to Count III, construed as Shawn Carson's claim for ERISA benefits

under 29 U.S.C. §1132(a)(1)(B). The motion is granted as against plaintiff Shawn Carson as representative of the Estate of Doris Carson.

A status and scheduling conference before the undersigned concerning the remaining claims (Count II construed as a breach of fiduciary duty claim against American Quality Schools Corporation and Count III construed as a claim for benefits against United of Omaha) is set for **Tuesday, May 23, 2017 at 2:00 p.m.** Hammond/Central Time. Counsel shall appear in person. At the conference, the court will schedule the Final Pretrial Conference/Settlement Conference, the Trial Management Conference, and a trial date, and discuss any other issues pending at that time.

**SO ORDERED.**

**ENTERED: May 17, 2017**

                                            **/s/ Philip P. Simon**
                                            **PHILIP P. SIMON, JUDGE**
                                            **UNITED STATES DISTRICT COURT**